I'd like to welcome our guests from Brazil. It's my understanding there's a group of judges here from Brazil. They're here with our colleague, Judge Montgomery Reeves and Judge Hodges. Welcome, everybody. Good morning, counsel. Whenever you're ready. Thank you, honors, and may it please the court. My name is Brad Bannas. I represent the appellants in this case. I'd like to request four minutes for rebuttal. Sure. Thank you, honors. Since 1976, no statute of regulation has required immigrants who apply for green cards to have visas that are current on the Department of State's visa bulletin at the time of approval. My understanding of your argument is it basically turns on how we look at the word judgment, the definition of what a judgment is, and whether or not a discretionary decision is tantamount to a judgment under the jurisdiction sweeping and stripping provisions of the Act. Your Honor, I think that would be my opposing counsel's framing of the issue, yes, Your Honor. Would you agree with that, though? I would agree that 8 U.S.C. 1252 A2B has been an issue in these cases. I would suggest it doesn't apply for three different reasons. The first is that the government does not see this as a discretionary decision. If it is based solely on a belief that the agency lacks lawful authority to take an action, it's not a discretionary decision. And the agency's briefing here and in various other appellate courts makes it clear they do not think they have the authority to grant a green card application unless the immigrant visa is immediately available. So they're exercising zero discretion. I would urge this court to push my colleague on that issue to get a firm answer because they have eloquently spoken out of both sides of their mouth throughout the country and, in my opinion, led at least two circuit courts down primrose paths where they are barring jurisdiction for discretion that they do not exercise and do not believe exists. I take it you're suggesting they misled the Eighth Circuit. Correct, Your Honor. And the Fifth Circuit. How is that? And now the Fifth Circuit. Yes, Your Honor. The Fifth Circuit had five appeals there. We argued three back-to-back-to-back one morning with three judges. They were identical cases. That's pending. And the one decision we did not argue came out two days ago in Shijati. So I'm not sure how that will play out. I was focused on this argument, not petitioning for rehearing. But, again, if you read Shijati, it's unclear what's even at issue in that opinion. What's at issue here is the agency's misinterpretation of the text, structure, and history of the Immigration Nationality Act, leading to the belief that they do not have authority to approve a green card application when an immigrant visa is not, quote, immediately available. That's the issue here. Why is that a decision of discretion? Why is comporting with the law not their best application of the law, which is a discretionary decision? I think there's a fine line, Your Honor, between a legal belief and a discretionary belief. If they believed they had the option to approve or not approve, that would be a discretionary decision. But their position is clearly, we do not have that ability. The law requires it. And our argument, Judge McKee, is that there's no statute or regulation that requires that. And that's the whole point of this case, Your Honor. Isn't the whole process discretionary? The whole process that results in the retrogressing of certain visa applications, there's no statute, I don't think, correct me if I'm wrong, that requires this really, this labyrinth, this Byzantine system that's in place, in terms of determining the priorities of visas and countries and visa categories. That is something that came out of the AG, isn't it? That's not a feature of Congress. That's something that came out of what, Your Honor? The Attorney General set this whole process up. So, no. 8 U.S.C. 1255A3, which is the provision we would suggest as an issue here, says, and that's Congress, says that an immigrant visa must be immediately available at filing. Right. But the whole process of retrogressing that, how they determine what's immediately available. So, Your Honor, if we look at 8 U.S.C. 1153, that gives the State Department specific requirements about how to calculate and how to determine whether there are visas available. The actual process, Your Honor, is shrouded in mystery. We don't know why they retrogressed by three years over the course of one month. It's a numbers game. I hate to characterize it as a numbers game, but it's a numbers game, isn't it, of folks from certain countries pursuing these visas and green cards? Your Honor, I do agree there's a limited number of visas. However, But the State Department determines how many visas are going to be issued to any particular country or any particular year. Well, I would suggest that Congress declares the caps, and then the State Department does its numbers in secret at their discretion. No, Your Honor. The minute discretion is in there, you almost have to say no, don't you? No, Your Honor. I mean, if you look at the language of 8 U.S.C. 1153, repeatedly, on every visa category, it says visas shall be made available, shall be made available. But on what basis? Excuse me. They shall be made available, but on what basis shall they be made available? Or on what basis did they become available? Is that discretionary? No, Your Honor. Congress allocated, I think it's roughly 140,000 visas for employment-based applicants a year. That does fluctuate depending on the use or non-use of family-based the year before. That's all mandatory calculations. When in 2020, in October of 2020, when the agency announced that my client's priority date was current, they applied for adjustment of status because under 8 U.S.C. 1255A.3, the only thing that's required is that there's a visa immediately available at filing. Congress tried the other games, Your Honor. They tried every other iteration. In 1952, you had to have it at filing and approval. In 1960, they changed it and said you don't have to have it at filing. You only have to have it at approval. Then finally— Let's say we buy your argument, right? Who then will decide who gets a visa when? Are you suggesting the courts? No, Your Honor. Congress tells the agency how to do it. They say do it in priority date order. The agencies don't. They don't do it in priority date order because of this—I don't know why, but Congress is clear they shall do it in priority date order. They don't, and that's the problem here. My clients are seeing people who filed two years after them get green cards, and now because of the retrogression and the agency's misinterpretation of law, they are—this is not an exaggeration—waiting another 10 to 15 years. Those are different countries, right? No, Your Honor. Most of my clients are Indian nationals and stuck in the backlog. At the time I filed these cases, I think I filed about 100 of them around the country. Ninety of them got through, and some of them were from priority dates of 2014, Your Honor. These folks are from December of 2012. It's incredibly frustrating for them to read the law that says the agencies shall do this in priority date order and then see their colleagues at work who filed two years later than them getting the green cards. That is not discretionary, Your Honor, and it is not discretionary to make up a rule to refuse to adjudicate petitions that they have a required and discrete duty to do. I just want to point—I just want to go back to the jurisdictional question for two other points. One, Patel doesn't cover this case. Patel deals with actions, judgments, things that have been decided, not inaction, and to interpret the word judgment or action to mean nonjudgment or nonaction would render the term completely worthless, because if it means everything, it means nothing. The Real ID Act, does that alter your argument in any way in broadening this beyond a judgment and including things like decision? The Real ID Act was—I believe the provision you're talking about in the Real ID Act was a direct consequence of the Supreme Court's decision in St. Cyr. In St. Cyr, the court in the 90s said basically, well, there has to be a second habeas way to challenge a removal order. Well, 2005, you now had two paths going up, because after the IRA-IRA in 1996, Congress tried to get them all to come to the courts of appeals, as you guys know, and you get lots of removal orders. But there was also this avenue to go through habeas and district court. In 2005, the sole reason of the amendment was to nip that in the bud and say, no, you cannot challenge removal in district court. We're not challenging removal, Your Honor. We are challenging an unlawful withholding. We're not even challenging unreasonable delay, because if we lose on unlawful withholding and they're allowed to put my client's cases on cold storage based on a policy, then it can't be unreasonably delayed. This is a pure unlawful withholding case. That's it. And I would say that's a far cry from what the Real ID Act in 2005 tried to fix. I would point this court to a decision from the Supreme Court on March 14th of this year called Wilkinson v. I think it's Garland. In that case, they revisited Patel, and they said for 1252A2B to be constitutional, the other provision that St. Cyr required added was 1252A2D, which was the savings clause that protected legal questions and constitutional questions. Do you have the cite for Wilkinson? I don't, Your Honor. You can send that to us. I will. Okay. But Wilkinson basically says that was a mixed question of law in removal proceedings, and I believe it was Justice Sotomayor who said, well, we've already said mixed questions of law are questions of law under 1252A2D. But that's a removal proceeding. I mean, you need something from the non-removal context in order to surmount the jurisdictional objection that we're concerned about. Your Honor, I would suggest that if A2D's savings clause is required to keep 1252A2B constitutional in removal, it's also required to keep it constitutional where we are today. Because what the court wants to do, or excuse me, what the agency's position would be is that they can sit on an application for adjustment of status for 50 years, and we can do nothing about it. They can put them on cold storage based on race, nationality, other nefarious reasons. You have no, none of those allegations here, do you? Your Honor, I would point you to the argument we did in the Fifth Circuit where Judge Willen asked about that. Hold on. What about in this case? Are those allegations as part of this case? No, absolutely not. Then I don't see the point. There's no limiting principle to that rationale. The limiting principle would be in a separate case that I'm sure you would bring if those facts were available, right? And then perhaps you would have some argument that says it can't be consistent with law to exercise discretion for something that's invidious and unconstitutional. But that's not your claim. Your claim is we don't like the way that they're implementing this, and we see problems with it, and I'll give you that. I'll give you that. But I still don't understand how that's not a discretionary decision. Your Honor, I see my time is up. Please go ahead. Thank you. It's because they say it's not discretionary. They say they cannot, it is illegal for them to make a decision and approve my client's immigrant visas right now. In fact, in one court, one argument, they said, well, if you compel us to do it, we're just going to deny them all because we can't approve them. That's not discretionary. And in their brief, they've argued in the alternative. I'm not faulting them for that. 1252A2B is a gift to the Department of Justice in these cases, especially the way Patel has interpreted it. But it can't cover everything, and it can't preclude 100 percent our legal and constitutional challenges without raising serious constitutional issues. Again, I would suggest that this idea that they're the Ninth Circuit case that then turned into the most recent DACA case in the Supreme Court. This is what the Ninth Circuit said. Agency decisions are presumptively reviewable if it's based solely on a belief that the agency lacked lawful authority to do so. That's exactly applicable here. And so that's why I would suggest it's not discretionary, Your Honors. Thank you. Thank you. Good morning. Good morning, Your Honors. May it please the Court, Jordan Hummel on behalf of the government. We ask that this Court affirm the District Court's decision below because 1255A grants the Attorney General discretion over adjustment of status, including both the ultimate decision What about your opponent's argument that if we follow your argument, you can basically work all kinds of evil cloaked under the guise of discretion? Let's assume, and this is not in any way a far-fetched assumption, that at some point in the future, an Attorney General decides to deny visas to anyone who is Muslim or from a Muslim country in the exercise of discretion. Are you saying there's no federal jurisdiction, if a challenge is brought to that, to get at that? They're not doing it as a matter of law, per se, but just in their discretion. They're denying visa applications filed by all Muslims or from a Muslim country. Not that far-fetched. Well, that is certainly not the case here. But our opinion, we can't write an opinion that says this only applies to Krishna Gita and to no one else on the face of the earth, whoever should bring such a claim. The rule of law that comes out of this case is going to be used and could be used in future cases. I am somewhat concerned about the limiting principles that your colleague raises as a problem, if we accept your argument that we have no subject matter jurisdiction, as long as the action of the Attorney General is deemed, quote, discretionary. And it makes sense that we shouldn't be interfering with the discretion of the Attorney General in these matters, because, as my colleague suggested, Judge Estrepo, courts can't get involved in issuing visas. We can't become like a super authority for issuing visas. And there's a plausible argument that if we follow your colleague's argument, that's what is waiting for us at the end of the road. But I'm concerned about somehow, it seems to me there's got to be a check on the exercise of discretion. And that check cannot be negated just because the Attorney General labels what they're doing as discretionary. So the check would be that the courts are still able to review legal determinations or applications of standards, but anything that is discretionary based on Congress's statutes, in both the APA and under the INA, have said that district courts are not to review discretionary decisions made by the agencies. No matter how it's exercised. I'm sorry. No matter how that discretion is exercised, we can't review it. That's what you're arguing. In a district court, in just a straight challenge to an application of an adjustment of status, no. This court would be able to review any constitutional challenges under 1252A2D, if they were to come up through removal proceedings and under a petition for review. So that is how constitutional challenges could make it before this court. But here we don't have constitutional challenges and we are challenging the application of the statute 1255A and other congressional limits on how many immigrant visas can be distributed, both in preference categories, whether they be employment, which type of employment or family, and also country caps as well. So that is what is driving the agency's actions in this case. And we do believe that 1255 grants discretion as both the Eighth and now the Fifth Circuit have agreed. We believe that that comes from the statutory text, which is clear, that the attorney general may adjust the status of noncitizens and skipping a few words, quoting in his discretion and under such regulations as he may prescribe. This language is clear that it is within the agency's discretion, both over the final decision and then also the process of how you get to the final decision, which would include holds where immigrant visas are no longer available because the caps have been met or because the visa bulletins have forecasted that there will not be enough immigrant visas to approve. Well, let me circle back to Judge McKee's hypothetical because I don't think he gave us an answer. How would somebody bring a challenge to the scenario Judge McKee described to you? Well, it's so 1252 A to B, those are going to be exercises of discretion. I don't think that I think that a blatant decision made based on someone's religion would not be an exercise of discretion. Well, it could happen, but I think that would not be. That's not that's not within the agency's discretion because that is not that wouldn't be constitutional. But every suggestion that somebody could bring a constitutional challenge and we would have jurisdiction. That's just the discretion. Doesn't it all wrapped up in the same? Judge, I guess I'm trying to follow your argument to that. I understood what statute to say and what the government was arguing is there's always a threshold determination of jurisdiction in any federal case. Does the court have the authority to do anything here? Right. Federal courts don't have jurisdiction automatically. They have whatever jurisdiction Congress chooses to give them. OK, they've given jurisdiction in two statutes here, 1331 and 1252. So we have to figure out what does that mean? And what that tells us is you have federal question jurisdiction unless it's an act committed to the agency's discretion. Well, I think there's a whole body of law that defines what discretion is. And it can't be something that's ultra viris that's outside of the competency or authority of the government. And I would assume that an invidious discrimination, discriminatory classification wouldn't be any legal definition of discretion. And that if the United States came before a court and said there's no jurisdiction because we took a discretionary decision to X, violate rampantly the Constitution, it would seem, and I understand that's not the facts of this case, and I understand that's your first distinction. It would seem the second distinction would be, well, no, that wouldn't surmount the discretionary standard. And therefore, the definition of jurisdiction would just be 1331. And why isn't that sort of the case that we have in every case, that process? I would agree that those challenges would be available. And then it can go back to 1331 for the federal question jurisdiction. But then we do have to go beyond that to see what the INA says and what the APA says because of the challenges that are brought here. So because these are brought under the APA, we do need to go back to 701A, which, again, removes the discretion. And this is the way that Congress wrote the statutes. And as they can have amended them, they continue to reinforce that they do want the agencies to have discretion over these matters. I mean, we have to. In other words, there is some legal factual analysis we have to look at, I would think, in any jurisdictional inquiry, including this one. And it's not just the labeling that would do it. It has to be, well, here's the explanation for what we're talking about. What we're talking about here is a policy that says we're going to hold these applications until the visas are available. We may disagree with that. I mean, I think that's a wise course. We may think it's a great course. But what we can all agree is that is both discretionary and not outside what we would assume to be the normal legal definition of discretionary because it doesn't implicate some sort of external lawlessness. If that's the case, then, then I don't see this jurisdictional argument you're making to be boundless. It seems like it's bounded within the meaning of the statute. I do believe that that's right. It does not. It is not something that's boundless. But in this case, it certainly falls within the bounds of the limiting principles of the statute, because we are dealing with a statute where the agencies are effectuating a very complex system that has been created by Congress and trying to comply with multiple statutes, reading 1255A and B together, to avoid going over the statutory caps that Congress has put in place. And so based on that reading of the statute, we believe, as the district court held below, that the APA 701A to the agency action is committed to discretion by law. So that is one of one avenue where they're just where jurisdiction is barred. And then 1252A2B2, as the Gullah in the Eighth Circuit and Jihadi in the Fifth Circuit have found. And then we also believe that there is an argument that one could apply as well. You're saying that language under this subchapter in B small ii ends it because the discretion here arises out of a statute that is under that subchapter. And therefore, the limitation on 1331 comes into play. Yes. So we begin with jurisdiction, but then the INA has removed the jurisdiction where any other decision or action by the attorney general has been committed to their discretion. And we believe that Patel, while analyzing subsection 1, does speak to subsection 2 as well, where it does say that these statutes should be read broadly. The language in subsection 2 is even more expansive than subsection 1 in that it's any other decision or action versus a judgment. And then I would also direct this court to prior holdings in this court. So in Vasso, we vote this court in Vasso, which is citing Pino also from this court. They found that there is no jurisdiction to review adjustment of status decisions because it is within the secretary's discretion. Those, of course, dealt with the final decision, not necessarily the process that we are in here. But we believe that the language of 1255A makes it clear that both that ultimate decision and the process are meant to be within the secretary's discretion based on Congress's intent. Even though it may well be a mess, there's nothing we can do about it. You may be right, but because it is a mess. But if it's a mess under subsection small i, small i, it's a mess that the secretary's got to deal with and clean up. We can't clean it up. Yes, it's in the agency's discretion to to effectuate Congress's intent and the stat within the limits of the statutes that are in existence at this time. Anything else? No. Thank you very much. Thank you. Thank you, Honors. Two quick points. The Supreme Court's opined on what it takes to preclude jurisdiction under 1252A2B2. That's in Kukana. It's from 2010. Aye, aye. Aye, aye. Yes. It's in Kukana. You'll note that's not cited anywhere in the opposing counsel's brief because it's bad for them. It says if there's a tie here, if it's a close call, the tie goes to the runner. The tie goes to the plaintiff. And to your point, Your Honor, you know, the way this works is 1331 provides jurisdiction here. There's no question about that. The government then bears the burden to show by clear and convincing evidence under Kukana that 1252A2BII precludes jurisdiction and overcomes the presumption of judicial review here. I heard both the government say that they could hear legal arguments and also that they couldn't hear this case. Those both can't be true. This is a purely legal argument. Do they have the right to withhold any adjudication despite Congress removing that criterion from the statute in 1976? If this is an exercise of discretion, Your Honor, this is an exercise of discretion that clearly ignores congressional intent and violates congressional intent. They would have to say that the repeal of this requirement in 1976 somehow empowers them to do it through sub-regulatory guidance. And I would suggest that the difficulty this Court is having coming to this conclusion is enough to overcome or is enough under Kukana to say there is jurisdiction here. What you didn't hear my opposing counsel say at all was the merits. That's because they don't have any text, structure, or history to support their refusal to make decisions on these applications. It's a misreading of law. That's why it's not a discretionary decision. So if you were on this panel, how would you write the opinion as to the relief you're looking for? Your Honor, I would first look at Bavaria, which is a Ninth Circuit case, the first case to come out on this issue that had no issues with jurisdiction. The Eighth Circuit and the Fifth Circuit have followed, but there is a circuit split on that. The second thing is I would say it's a close call, so it goes to the runner. You say it had no issues with the discretion, but was discretion raised in that case? Was the jurisdictional issue raised in that case? Absolutely, Your Honor. It's been raised in every case. And the Ninth Circuit spoke to the jurisdictional question? It did not. It didn't see it as a hindrance. It got straight to the merits. How do we know that they didn't see it as a hindrance when you say they didn't discuss it, right? We certainly discussed it in Seattle. Did the Ninth Circuit discuss it in its published opinion? Yes, in its published opinion. It did to the extent it recognized it had jurisdiction. It didn't do a separate analysis on it, Your Honor. I think your answer is helpful. Go ahead. Excuse me? Just continue with your argument. Okay. The merits here are very clear for us. That's why the agencies won't embrace it. Congress removed the criterion in 1976 that they've been applying for the last 46 years through sub-regulatory policy. For most of the time, it hasn't made an issue or hasn't been a problem, which is why we haven't had this case for the last 30 years. However, the agencies are using their discretion to waste immigrant visas, $60,000 one year, $40,000 the next, $20,000. This is not an issue of them going over the line. They are going well under, and that's the real problem. You want to talk about why there's a mess, Your Honor? They're using their discretion to not issue green cards because of these holds. And it does – There's a mess, but that doesn't give us jurisdiction. Those were that simple. Help me understand again why you're saying Patel is not helpful. Is it only because Patel dealt with subsection small i and not small ii? So that's the first thing, Your Honor. Patel also deals only with an affirmative decision, an affirmative action, a decision. This is not a challenge to a denial of an adjustment of status. This is a challenge to the agency's refusal to do anything. It's not even an unreasonable delay. It's an unlawful withholding claim. And the agency cannot hide behind discretion to avoid review of its legal opinion that it cannot take these actions. So, again, what are you asking us to tell the agency to do? Thank you, Your Honor. I'm asking to set aside these policies and compel them to make decisions on my client's applications. Would that not overturn the entire immigration system in this context, though? And maybe you think that's a good thing. Maybe it needs to be overturned. No, Your Honor. There are thousands of visas available right now under 8 U.S.C. 1152. In the EB-2 category? Correct, Your Honor. The State Department and I see I'm out of time. Go ahead. But wouldn't that put courts in the position of telling the agency when to distribute these visas? Your Honor, I think it would be the check because Congress has told them when to do it and they're refusing to do it. And so that's the role of the third branch of government is to put a check on the executive when it ignores the legislature. And I think that's very clear here. Congress tried every which way. They settled on designating whether an immigrant visa is immediately available at filing and then if there's visas available, then approving it. And, again, I know I'm over time, but if you look at 1152, Your Honor, there are production limits per fiscal quarter of the fiscal year. So the second fiscal quarter just ended March 30th. That means, by definition, they can't have decided more than 54 percent of immigrant visas available for EB-2. So right now there are visas available for my clients. So an order compelling the agency to act would not overturn anything. They would take two of those visas off the shelf, allocate them to my client, who have been waiting for 12 years, and allow them to be green card holders. Thank you, Your Honors. Thank you. Counsel, thank you both for your arguments and your briefing. We will take this matter under advisement and circle back to you. Have a good day.